## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

UNITED STATES OF AMERICA,

No. 2:16-cr-00243-ALM-1

Hon. Algenon L. Marbley

       Plaintiff

v.

SHAWN PATRICK PARRISH,

       Defendant.

_____/

## MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255
*(Including Request for Appointment of Counsel, Request for Evidentiary Hearing, and Request to Compel Production of Video)*

Shawn P. Parrish, by and through his Attorney, Melissa Salinas, moves this Court to vacate his sentence pursuant to 28 U.S.C. § 2255, and says in support of this motion:

1.    Mr. Parrish was convicted after a jury trial of receiving visual depictions of child pornography after sustaining conviction for a sexual abuse offense involving a minor in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Judgment, Dkt. 111, PageID# 924. Judgment was entered on April 13, 2018, and he was sentenced to 180 months in prison. *Id.* at 924–25.

2.    Mr. Parrish's conviction arose out of an investigation by the Franklin County Internet Crime Against Children Task Force (ICAC) and Homeland Security

1

Investigations (HSI). Presentence Investigation Report, CA6 Dkt. 13, p. 4. In July 2016, these authorities identified a computer that was using Peer-to-Peer software to download child pornography at 87 Daughtery Circle in Newark, Ohio. *Id.* at 4–5. Mr. Parrish lived at that address with two other adults, Jerimiah Wigle and Brenda Meckley. Op. and Order, Dkt. 61, PageID# 446–47.

3.     The authorities obtained a warrant to search the residence and curtilage of the above address, including any digital media located therein. Search Warrant, Suppression Hr'g Government's Exhibit 1. They executed the search on August 30, 2016.  Op. and Order, Dkt. 61, PageID# 447. The warrant did not reference cellular phones, or the search of individuals.

4.     While executing the warrant, Agent Nathaniel Simon and Investigator Amanda Saxton interviewed Mr. Parrish and Mr. Wigle in an ICAC mobile command unit. *See id.* Op. and Order, Dkt. 61, PageID# 448; Trial Tr., Dkt. 116, PageID# 1037. During Mr. Parrish's interview, Agent Simon and Investigator Saxton searched his phone. Suppression Hr'g Tr., Dkt. 37, PageID#  255–56. Upon questioning, Mr. Parrish told law enforcement they would find a nude videos and images of his 13-year-old daughter ("MP") on his phone. *Id.* at 216, 255–57. He explained that he had found videos and images on his daughter's Facebook because she had been sending them to someone else. *Id.* at 216, 255–57. He had forwarded them to himself so that he could later confront MP's legal guardians about it. *Id.*

5.      Mr. Parrish was eventually arrested and tried for his possession of the videos and images found on his cellular phone. *See* Judgment, Dkt. 111, PageID# 924. With respect to the original basis for the search of the residence, law enforcement determined that Mr. Wigle was the one who was downloading child pornography. Trial Tr., Dkt. 116, PageID# 1035–36. Mr. Wigle was arrested and tried in state court. *Ohio v. Wigle*, 2017 CR 00507, Licking County Common Pleas Portal, https://apps.lickingcounty.gov/TAGCPM.PA.PublicPortal/.

6.      Before trial, Mr. Parrish moved to suppress the evidence obtained from his phone. *See generally* Motion to Suppress Evidence, Dkt. 26, PageID# 48–59. At a hearing on the motion to suppress, Mr. Parrish and Agent Simon and Investigator Saxton offered different accounts of their conversation in the ICAC mobile command unit on August 30. Although the mobile command unit is supposed to continuously capture both video and audio while investigators are conducting interviews, this Court was not able to verify the credibility of the competing accounts because the recording of Mr. Parrish's interview did not contain audio. Agent Simon testified that this was because the mute button had been pushed—a "malfunction" that the investigators did not discover until "a day or two later." Suppression Hr'g, Dkt. 37, PageID#176–78. Both Agent Simon and Investigator Saxton offered a similar story regarding the malfunction during their testimony at trial. *See, e.g.*, Trial Tr., Dkt. 116, PageID# 1017–27, Trial Tr., Dkt. 117, PageID# 1473–78.

7.    Investigations subsequent to Mr. Parrish's trial suggest that there exists a recording with audio of Mr. Parrish's interview with Agent Simon and Investigator Saxton. Mr. Parrish's appellate counsel corresponded with counsel for Mr. Wigle in his state court case, Attorney Diane Menashe. *See, e.g.*, Exhibit A, Email Correspondence with Attorney Diane Menashe. Attorney Menashe stated that she possesses a recording of the interview with Mr. Wigle—conducted only minutes after the interview with Mr. Parrish—that contains audio. *Id.* Since the ICAC mobile command unit continuously records, *see* Trial Tr., Dkt. 117, PageID# 1475–76, the existence of an audio recording of Mr. Wigle's interview suggests that the mobile unit also captured audio of Mr. Parrish's interview. At the very least, an audio recording of Mr. Wigle's interview means that the malfunction was discovered the same day as Mr. Parrish's interview—not a day or two after the interview. *See* Trial Tr., Dkt. 117, PageID# 1474.

8.    Despite indications of its existence and repeated efforts to obtain it, Mr. Parrish has not been able to obtain the audio of his interview. Mr. Parrish wrote to Attorney Menashe but did not receive a response. Exhibit C, Letter from Mr. Parrish. Mr. Parrish's appellate counsel also requested the interview from Attorney Menashe, but she refused to provide it, citing privacy concerns, and stating counsel should obtain it from the prosecutors. Exhibit B, Email Correspondence with Attorney Diane Menashe. Moreover, Mr. Parrish's counsel sought the audio from the Licking

4

County Prosecutor's Office but was told the office did not have a copy with functioning audio. Exhibit D, Email Correspondence with Licking County Prosecutor's Office.

9.      Title 28 U.S.C. § 2255 provides relief when a sentence is imposed in violation of the Constitution. 28 U.S.C. § 2255(a). The withholding of audio from the ICAC mobile command unit during the proceedings in this Court deprived Mr. Parrish a full and fair hearing on his Fourth Amendment claims and violated his due process rights, giving rise to the following constitutional violations:

**I.      The prosecution's failure to provide the audio recording denied Mr. Parrish a full and fair opportunity to litigate his Fourth Amendment claims.**

The withholding of the recording deprived Mr. Parrish of the opportunity to fully and fairly litigate his Fourth Amendment claim because it frustrated the procedural purpose of the suppression hearing. *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (opportunity for full and fair litigation standard applies to § 2255 motions); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (noting that there is no opportunity to fully and fairly litigate a claim if the presentation of the claim was in fact frustrated because of a failure of procedural mechanism).

At all stages of adjudication, Mr. Parrish has argued that investigators searched his phone in violation of the Fourth Amendment because they coerced his consent by claiming they had a warrant for the phone.  He has consistently requested

that the Court suppress evidence and statements obtained in relation to the unlawful search and arrest. *See, e.g.*, Motion to Suppress, Dkt. 26, PageID# 48; Suppression Hr'g, Dkt. 37, PageID# 250. The investigators, however, maintained that they had simply asked him if they could see the phone and he handed it over. *See, e.g.*, *id.* at PageID# 149, 226. The judge presiding at the suppression hearing noted that the lack of audio on the provided recording of Mr. Parrish's interview complicated the adjudication of the motion to suppress. *Id.* at 293–94.

Although Mr. Parrish's claim was adjudicated at the trial and appellate level, the existence of audio on a video provided to Mr. Wigle's counsel indicates that Mr. Parrish's adjudication was performed on the basis of incomplete and/or false information. Mr. Parrish was denied the ability to prove that Agent Simon and Investigator Saxton did not seek his consent before seizing and searching his phone in violation of the Fourth Amendment.

## II. The prosecution's failure to provide the audio recording prior to trial violated Mr. Parrish's Fifth Amendment Due Process rights under *Brady v. Maryland*.

The suppression of the recording violated Mr. Parrish's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), for two alternative reasons. First, it suggests that the prosecution knowingly used false testimony. *See Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (stating that the "deliberate deception of court and jury by the presentation of testimony known to be perjured" violates the

defendant's due process right). Second, at the very least, the recording was material impeachment evidence that should have been provided to Mr. Parrish. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding that the *Brady* right includes impeachment evidence).

## A. The recording indicates that the prosecution knowingly used false testimony.

The audio recording suggests that the prosecution knowingly used false testimony, or failed to correct false testimony, in violation of Mr. Parrish's due process rights. To prevail on a false testimony claim, a habeas petitioner must show (1) that the prosecution presented false testimony, (2) that the prosecution knew the testimony was false, and (3) that the testimony was material. *Abdus-Samad v. Bell*, 420 F.3d 614, 626 (6th Cir. 2005).

First, Agent Simon and Investigator Saxton's testimony was false. They both explicitly testified at trial that there was no audio recording of the interview with Mr. Parrish. *See* Trial Tr., Dkt. 116, PageID# 1017–27; Trial Tr., Dkt. 117, PageID# 1473–74. Quite simply, the mere existence of a recording of the interview with Mr. Parrish indicates this testimony was "indisputably false." *See United States v. Silva-Garcia*, 527 F. App'x 379, 382 (6th Cir. 2013).

Furthermore, the audio recording of Mr. Wigle's interview in Attorney Menashe's possession proves other aspects of Agent Simon's testimony at trial was false. Agent Simon testified that investigators did not realize the mute button in the

7

ICAC mobile unit was pressed until a day or two after the interview with Mr. Parrish and that Mr. Parrish's interview was the only one affected by the glitch. Trial Tr., Dkt. 117, PageID# 1473–78. But Mr. Parrish's interview took place only minutes before Mr. Wigle's interview. *See* Trial Tr., Dkt. 116, PageID# 1037. If the malfunction was not discovered until a day or two after then *both* interviews should have been affected by the malfunction. Moreover, if there is audio of Mr. Wigle's interview there should also be audio of Mr. Parrish's interview because the ICAC mobile unit continuously records. *See* Trial Tr., Dkt. 117, PageID# 1475–76. In light of these implications, Agent Simon's testimony is illogical.

Second, the prosecution was aware of the false testimony. Attorney Menashe indicated that audio of Mr. Wigle's interview was in the discovery packet provided by state prosecutors. Exhibit A, Email Correspondence with Attorney Diane Menashe. Presumably the state prosecutors originally received this audio from the same law enforcement agencies that interviewed both Mr. Parrish and Mr. Wigle. This suggests that the federal prosecutors in Mr. Parrish's case were also provided with the interview by the investigators. At the very least, this Court should hold an evidentiary hearing to determine who received a working audio recording of Mr. Parrish's interview, and when they received it.

Third, Agent Simon and Investigator Saxton's testimony was material. When the prosecution knowingly uses false testimony, the conviction must be set aside as

long as there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). "Applying this standard in most cases involving perjury or its equivalent will likely result in . . . constitutional error." *Gilday v. Callahan*, 59 F.3d 257, 268 (1st Cir. 1995); *see also Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009) (describing the *Agurs* standard as favorable to the defendant).

Here, the use of false testimony as to the recording affected the weight the jury assigned to the testimony provided by Agent Simon and Investigator Saxton. *See Rosencrantz*, 568 F.3d at 588 (explaining that perjured testimony "would have affected the jury's view of [the witness's] credibility"); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").

Finally, the false testimony had a "substantial or injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Agent Simon and Investigator Saxton were two of the government's key witnesses—without them "there could have been no indictment and no evidence to carry the case to jury." *See Giglio*, 405 U.S. at 154. If the jury had known that significant portions of law enforcement's testimony was false, it would have discounted their testimony against

Mr. Parrish and the "substance of the case" against him would have been severely weakened. *Cf. Gilday*, 59 F.3d at 269–70 (finding that the government's case would not have changed even if the jury knew a witness's testimony was false because the government could rely on other witnesses or evidence). Even if the jury's determination was not affected, the use of false testimony infected the integrity of the proceedings and, therefore, prejudiced Mr. Parrish. *Brecht*, 507 U.S. at 638 n.9.

### B. A recording with functioning audio is also powerful impeachment evidence.

Second, the recording is powerful impeachment evidence. *Giglio*, 405 U.S. at 104 (extending the prosecution's disclosure obligation to impeachment evidence). Under *Brady*, impeachment evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The existence of a recording with functioning audio directly undermines Agent Simon and Investigator Saxton's testimony and their credibility. *Eakes v. Sexton*, 592 F. App'x 422, 428 (6th Cir. 2014) (explaining that impeachment evidence is material if it "would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration"). It suggests that both Agent Simon and Investigator Saxton were willing to misrepresent details about their investigation in front of the jury. This calls into question their reliability as witnesses and "undermine[s] confidence in the outcome" of the trial. *Bagley*, 473 U.S. at 682.

On a related note, the contents of the audio itself could produce valuable impeachment evidence. For example, if the audio supports Mr. Parrish's account of the conversation in the ICAC mobile command unit, it would show Agent Simon and Investigator Saxton misrepresented this conversation at the suppression hearing to achieve a favorable result. Showing that law enforcement agents were misrepresenting an important conversation would be uniquely damaging to their credibility and would call into question to veracity of their testimony at all stages of the case, including trial. *See Bell v. Bell*, 460 F.3d 739, 750 (6th Cir. 2006) (explaining that it is the "lack of confidence in the verdict, not the ability to support the verdict with the entirety of the evidence" that matters for the *Brady* materiality inquiry).

In all, the existence of the audio recording indicates the prosecution violated Mr. Parrish's due process rights. It suggests that the prosecution knowingly used false testimony to obtain Mr. Parrish's conviction, substantially affecting the jury's ability to ascertain the credibility of the government's key witnesses. The audio recording is also strong impeachment evidence because it seriously undermines both Agent Simon and Investigator Saxton's testimony. Under either theory, the failure to disclose the audio recording violated Mr. Parrish's constitutional rights and undermined the integrity of the proceedings.

10.     Undersigned counsel represented Mr. Parrish on his direct appeal by court appointment under the Criminal Justice Act.  Counsel prepared the instant petition on a pro bono basis at the request of Mr. Parrish because Mr. Parrish is indigent.  Due to her other appointed cases and the fact that her practice is located in Michigan, counsel is not in position to continue to represent Mr. Parrish in the Southern District of Ohio.  She believes Mr. Parrish and the Court would benefit from the appointment of local counsel.

<u>RELIEF REQUESTED</u>

Because of the serious constitutional infirmities set forth above, Mr. Parrish requests this Court:

a.  Appoint local legal counsel to represent Mr. Parrish;

b.  Compel Attorney Menashe to provide her copy the video of the August 30, 2016 interview in the ICAC mobile command unit;

c.  Hold an evidentiary hearing to examine the contents of the recording and the circumstances related to it, and to question witnesses who could shed light on circumstances relating to this petition;

d.  After that hearing, grant his petition for writ of habeas corpus; and

e.  Grant other, further, and different relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

/s/ Melissa M. Salinas
Melissa M. Salinas (MI – P69388)
University of Michigan Law School
Federal Appellate Litigation Clinic
Jeffries Hall, Room 2058,
701 South State Street
Ann Arbor, Michigan 48109
Phone: (734) 764 2724
salinasm@umich.edu
*Counsel for Shawn Parrish*

Casey D'Alesandro
Conor Bradley
University of Michigan Law School
Federal Appellate Litigation Clinic
*Law Students on Motion*

## CERTIFICATE OF SERVICE

On April 5, 2021, I electronically filed the foregoing document using the

ECF system which will send notification of such filing to counsel of record.

/s/ Melissa M. Salinas
*Counsel for Shawn Parrish*